**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JOSEPH CARRILLO,**

       **Plaintiff,**

vs.                                                                                                  No. CIV 02-1179 WDS

**JO ANNE B. BARNHART, Commissioner**
of the Social Security Administration,

       **Defendant.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision filed on May 5, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for supplemental security income or disability insurance benefits. The Court, having considered Plaintiff's Motion [docket # 13] and Memorandum Brief [docket # 14], Defendant's Response [docket # 15], Plaintiff's Reply [docket # 16], the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

**I. Background**

      Plaintiff, who was born on September 28, 1951, alleges that he became unable to work as a result of his disabling impairments on June 6, 2000. Tr. 62, 178. He had been employed as a truck driver before the onset of his alleged disability. Tr. 29-30. The record indicates that Plaintiff sustained a moderate cervical lumbosacral sprain after he was involved in a motor vehicle accident on May 2, 1990. Tr. 100. Additionally, Plaintiff reported back pain while unloading his truck in

March and August 1994, Tr. 119, and alleged another injury to his back when he twisted at work in March 1995, Tr. 120.  Plaintiff was also diagnosed with carpal tunnel syndrome ("CTS") on May 30, 1995, Tr. 102, but never received treatment for CTS, Tr. 38, 43.

Plaintiff filed his initial applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act on September 11, 2000.  Tr. 62-66, 178-180.  After Plaintiff's applications for benefits were denied at the initial level, Tr. 48-52, 182-186, and at the reconsideration level, Tr. 55-57, 188-190, Plaintiff appealed by filing a request for hearing by an administrative law judge ("ALJ") on July 27, 2001, Tr. 58-59.

The hearing before the ALJ was held on March 22, 2002, at which Plaintiff appeared and was represented by an attorney.  Tr. 23-45.  Plaintiff alleged that he was disabled as a result of back problems, carpal tunnel syndrome, and hypertension.  Tr. 31-32.  In a decision dated April 18, 2002, the ALJ denied Plaintiff's claims for DIB and SSI.  Tr. 11-20.  Plaintiff then filed a request for review with the Appeals Council on May 16, 2002.  Tr. 6-7.  The Appeals Council denied Plaintiff's request for review on July 19, 2002, Tr. 4-5, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").  *See* 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) on August 25, 2000.  This case has been assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied.  *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993).  In determining whether the

Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988); 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds

to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 12. The ALJ found at step two that Plaintiff's degenerative disc disease was severe, but that his bilateral carpal tunnel syndrome and hypertension were not severe. Tr. 13. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal the Listings. Tr. 14. At step four, the ALJ found that Plaintiff retained the RFC to perform light exertional level work, but that he could not perform his past relevant work as a truck driver or plumber's helper because those jobs require at least medium level exertion. Tr. 15-18. The ALJ relied upon the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("grids") to find at step five that Plaintiff is not disabled. Tr. 18. Plaintiff contends that the ALJ erred at steps four and five of the sequential analysis.

### IV.  Discussion

#### A.  Step Four:  Assessment of Plaintiff's RFC

Plaintiff's first contention is that the ALJ erred when he concluded that Plaintiff retains the RFC to perform light exertional level work because the record indicates that he suffers pain. As support for this argument, Plaintiff points to evidence indicating that he took pain medication, pain

4

control injections, received recommendations that he lose weight, and had been treated for muscle spasms bilaterally in the lumbar musculature.

It is clear that a claimant's subjective allegation of pain, in and of itself, is not sufficient to establish disability. *E.g., Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). Rather, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must prove by objective medical evidence the existence of a pain-producing impairment . . . that could reasonably be expected to produce the alleged disabling pain." *Id.* (citing *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987)). The ALJ determined that Plaintiff has a medically determinable physical impairment that could reasonably be expected to produce back pain. Tr. 16. This determination is supported by the record, for Dr. Alan Jakins' impressions of Plaintiff's condition in 2001 included chronic low back pain, bulging discs, and a herniated nucleus pulposus at L5-S1. Tr. 143, 159.

Where a claimant has established by objective medical evidence that he has an impairment that could reasonably be expected to produce pain, an ALJ must consider all of the evidence to decide whether he believes the claimant's allegations about the functional limitations that result from the pain. *See* 20 C.F.R. §§ 404.1529, 416.929; *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ determined that Plaintiff's testimony about his symptoms and their resulting limitations was "credible only to the extent that he is limited to light work" for the following reasons. First, although Plaintiff injured his back in the early 1990s, his pain did not prevent him from driving a dump truck in 1998 and 1999. Tr. 17. Second, the ALJ cited examples of Plaintiff's failure to seek and comply with medical treatment. For instance, Plaintiff did not seek medical treatment for back pain from February 1997 until April 2001, and did not seek treatment until ten months after his alleged onset date. The ALJ also noted that Plaintiff failed to comply with his treating physician's repeated

5

recommendations that Plaintiff exercise and lose weight, and that Plaintiff did not attend physical therapy since his alleged onset date.  *Id.*  Third, the ALJ cited Plaintiff's treating physician's conservative treatment regimen, the fact that he had seen no reason to obtain new x-rays or MRI studies, and his notes indicating that Plaintiff responded well to conservative treatment.  *Id.*  Finally, the ALJ cited a functional capacity evaluation that found that Plaintiff exhibited symptom magnification, and that he could perform light level work.  *Id.*

Plaintiff does not identify any evidence that would contradict these findings.  Indeed, while Plaintiff asserts that the ALJ made a "leap of faith" in finding that Plaintiff retains the RFC to perform light work, Plaintiff wholly fails to explain in his opening brief *how* the ALJ allegedly erred in assessing Plaintiff's RFC.  In his Reply brief, Plaintiff asserts in response to one of Defendant's arguments that the ALJ could not properly discount his credibility because he failed to seek prompt medical treatment and failed to comply with recommendations that he lose weight and exercise.  According to Plaintiff, the ALJ could not discount his credibility based on these facts because he cannot afford treatment.  However, after noting Plaintiff's testimony that his wife works and that Plaintiff also received a worker's compensation settlement of $32,000 in 1997, the ALJ concluded that "financial problems should not have been a barrier to seeking medical treatment, if treatment was needed."  Tr. 17.  Plaintiff has not mentioned this finding or presented any reason why it may have been erroneous.  Accordingly, I find that the ALJ could properly consider Plaintiff's failure to seek prompt treatment, and his failure to comply with recommended treatment, in assessing Plaintiff's credibility.  *See Qualls v. Apfel,* 206 F.3d 1368, 1372-73 (10th Cir. 2000) (ALJ may properly consider failure to seek medical treatment in assessing credibility of pain complaints).

Plaintiff also contends, for the first time in his Reply brief, that some of the evidence the ALJ

6

relied upon in assessing his RFC is of questionable value. Courts do not generally consider arguments raised for the first time in a reply brief. *E.g., Stump v. Gates,* 211 F.3d 527, 533 (10th Cir. 2000). However, since Plaintiff made this argument in response to Defendant's contention that the ALJ's RFC assessment was proper, I will address this argument. The ALJ based his determination that Plaintiff retains the RFC to perform light exertional level work upon the following. First, a physician hired by the Administration to conduct a physical residual capacity assessment found that Plaintiff's functional limitations were consistent with an RFC for light work. Tr. 15 (citing Tr. 149-157). Second, Plaintiff underwent a functional capacity evaluation on March 5, 1996 that indicated that he could perform light work. Tr. 121. Additionally, a physician who had treated Plaintiff apparently noted his agreement with the March 5, 1996 assessment and released Plaintiff to light duty, with no excessive bending or heavy lifting, on July 11, 1996. Tr. 117-18. Third, the ALJ cited the fact that Plaintiff's current treating physician, Dr. Alan Jakins, had "not given the claimant any specific restrictions, but, in fact, has encouraged him to exercise." Tr. 15.

I agree with Plaintiff that the ALJ's reliance upon a functional capacity evaluation conducted in 1996, and the fact that a physician released Plaintiff to light duty work in 1996, may be misplaced. Since the relevant time period for purposes of this case is from Plaintiff's alleged onset date of June 6, 2000 to the date of the ALJ's decision, April 18, 2002, assessments conducted in 1996 may have little probative value. Nevertheless, the ALJ also relied upon a physical residual functional capacity assessment dated March 16, 2001, Tr. 15 (citing Tr. 149-157), and the fact that Plaintiff's treating physician, Dr. Alan Jakins, had "not given the claimant any specific restrictions, but, in fact, has encouraged him to exercise." Tr. 15. The ALJ was entitled to rely upon the physical residual functional capacity assessment conducted on March 16, 2001, Tr. 149-157, which appears to be

7

based upon a report by Dr. Don Clark, a consultative examiner.[1]  The ALJ was also entitled to rely upon records by Dr. Jakins, who was Plaintiff's treating physician again from approximately April 2001 through January, 2002.  *See generally* 20 C.F.R. § 404.1545(a)(3) (evidence used to assess RFC includes consultative examinations and reports by claimant's medical sources).

Plaintiff asserts, however, that the ALJ accorded improper weight to Dr. Clark's and Dr. Jakins' reports.  On February 22, 2001, Dr. Clark found that Plaintiff could bend forward about 100 degrees, could bend to either side 30 degrees, and had no limitation of motion at that time.  Tr. 132.  Dr. Jakins found on April 3, 2001 that Plaintiff's flexion of his lumbar spine was 10 degrees at best effort, left lateral flexion was to 10 degrees, and right lateral flexion was to 15 degrees.  Tr. 142.  Plaintiff contends that it was "incredible" of the ALJ to give more weight to Dr. Clark's report than to Dr. Jakins' report because Dr. Jakins was Plaintiff's treating physician.  Plaintiff further asserts that the weight the ALJ gave Dr. Clark's report was "undue and excessive."  Contrary to Plaintiff's assertions, however, I do not think  the ALJ gave more weight to Dr. Clark's report, nor was the weight he assigned that report undue or excessive.  The ALJ wrote:

> Examinations have shown limitation of motion of the spine, although this has been somewhat inconsistent.  For example, Dr. Clark's examination on February 22, 2001, showed that the claimant could bend forward 100 degrees and to either side 30 degrees, but just over a month later, Dr. Jakin's examination showed that the claimant could bend forward only 10 degrees, extend 0 degrees, and bend to the left side 10 degrees and the right 15 degrees.  At any rate, Dr. Jakin's records show that the claimant's forward flexion improved to 50 to 60 degrees within 2 months, with similar improvements in extension and lateral bending, and that the claimant has maintained

---

[1]"Check-mark style" evaluation forms like the physical residual functional capacity assessment form, "standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."  *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987).  However, the form cited by the ALJ appears to be based upon a consultative examination conducted by Dr. Don Clark.  *See* Tr. 130-34.  Since Dr. Clark provided a written report of his findings, I do not find that the physical residual functional capacity assessment is incompetent evidence.

8

these improvements.

Tr. 14-15. I therefore find that the ALJ did not give Dr. Clark's report undue or excessive weight, or even more weight than Dr. Jakins' report. The ALJ simply noted that in spite of the inconsistency between the two reports, Dr. Jakins' records indicated that Plaintiff's back condition had improved.

Courts generally defer to an ALJ's determination of a claimant's credibility. *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). In this case, the ALJ explained why he discounted Plaintiff's claims of disabling back pain, and cited specific evidence in the record supporting his conclusions. Accordingly, and for the reasons discussed above, I find that Plaintiff has failed to provide a cognizable reason to conclude that the ALJ erred when he assessed the functional limitations that result from Plaintiff's back pain.

In addition to Plaintiff's back condition, the record indicates that Plaintiff was diagnosed with carpal tunnel syndrome on May 30, 1995. Tr. 102. Defendant contends that the ALJ was not required to consider Plaintiff's carpal tunnel syndrome ("CTS") because the ALJ determined that Plaintiff's CTS was not a severe impairment. Plaintiff asserts, on the other hand, that the ALJ erred when he found that Plaintiff retains the RFC for light work because his carpal tunnel syndrome ("CTS") "markedly impairs and impacts his residual functional capacity . . . ."

The Commissioner's regulations state that in assessing a claimant's RFC, an ALJ must consider the limiting effects of all of the claimant's impairments, whether or not they are severe. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e). I therefore agree with Plaintiff that the ALJ was required to evaluate the effect of his CTS on his ability to perform work duties. Contrary to Plaintiff's argument, however, I find that the ALJ adequately addressed Plaintiff's CTS in his decision, and his determination that Plaintiff's CTS did not prevent him from performing light work activities is

9

supported by substantial evidence.

The ALJ noted that Plaintiff complained of dysesthesias[2] in his hands in 1994 and 1995, and was diagnosed with CTS in 1995. Tr. 13 (citing Tr. 102). However, the ALJ wrote that Plaintiff's medical records indicate that he "made no further complaints of neck or upper extremity pain." *Id.* These findings are supported by the record. While Plaintiff had been diagnosed with CTS on May 30, 1995, Tr. 102, I can find no indication that Plaintiff ever sought treatment for that condition during the relevant time period. The ALJ also cited a record by Dr. Jakins dated April 17, 2001 that indicated that Plaintiff had a history of bilateral upper extremity dysesthesias that was "presently not clinically active." Tr. 14 (citing Tr. 140). Additionally, the ALJ noted that a consultative examination performed on February 22, 2001 by Dr. Don Clark indicated that Plaintiff's mobility in his wrists was normal, there was no tenderness over his left wrist, sensation seemed to be intact, and that his grip in his right hand was 220 and grip in his left hand was 170. Tr. 13 (citing Tr. 130-34). Although Dr. Clark noted that Plaintiff had previously been diagnosed with CTS, his impressions did not include any impairments related to Plaintiff's upper extremities. Tr. 132.

While Plaintiff testified that his CTS is getting worse, and he drops things because of his CTS, Tr. 38, 40, the medical examinations cited above that were conducted during the relevant time period do not indicate that he suffered functional restrictions as a result of CTS, *see* Tr. 132, 140. It was proper for the ALJ to consider the extent to which Plaintiff's testimony about his symptoms could reasonably be accepted as consistent with the objective medical evidence. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). In reviewing the ALJ's decision, this Court cannot re-weigh the evidence,

---

[2]A dysesthesia is "[a] condition in which a disagreeable sensation is produced by ordinary stimuli; caused by lesions of the sensory pathways, peripheral or central." Stedman's Medical Dictionary 531 (2d ed. 1995).

nor should it substitute its judgment for that of the Commissioner, *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994), and I must affirm the ALJ's decision if it is supported by more than a scintilla, but less than a preponderance, of evidence. *See Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988). I find that the evidence cited in the ALJ's decision provides adequate support for his determination that Plaintiff retained the RFC for light work activities despite his diagnosis of CTS.

### B. Step Five: Reliance on the Grids

The ALJ relied upon the grids to find, at step five, that Plaintiff is not disabled. Plaintiff contends that it was improper for the ALJ to rely upon the grids because he suffers the nonexertional impairment of pain. According to Plaintiff, rather than relying upon the grids, the ALJ was required to obtain vocational expert testimony in order to identify specific jobs Plaintiff could perform, set forth the specific exertional requirements of each job, state the number of such jobs available in the regional and national economies, and set forth the level of readjustment that would be required.

The grids were created to assist the Commissioner in determining whether a claimant has the RFC to perform work that exists in significant numbers in the national economy. In many cases, the Commissioner can meet her burden of proving at step five that jobs the claimant is able to do exist in significant numbers in the national economy by relying upon the grids. *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984). There are, however, instances in which the grids cannot be applied. For example, since the grids consider only exertional or strength based limitations, the grids may not be applicable where the claimant has nonexertional impairments. *Id.* at 580.

While pain is a nonexertional impairment, the mere presence of a nonexertional limitation such as pain does not automatically preclude reliance on the grids. *E.g., Gossett v. Bowen,* 862 F.2d 802, 807-08 (10th Cir. 1988). "The presence of nonexertional impairments precludes reliance on the grids

only to the extent that such impairments limit the range of jobs available to the claimant. *Id.* Thus, where nonexertional impairments are present the ALJ must make certain findings before relying conclusively upon the grids. An ALJ may not rely conclusively on the grids unless he or she makes the following findings: (1) the claimant has no significant nonexertional impairment; (2) the claimant can do the full range of work at some RFC level on a daily basis; and (3) the claimant can perform most of the jobs in that RFC level. *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). Each of these findings must be supported by substantial evidence. *Id.*

As noted above, Plaintiff has been diagnosed with chronic low back pain, bulging discs, a herniated nucleus pulposus at L5-S1, and carpal tunnel syndrome. These are conditions that could reasonably be expected to produce pain. Although the ALJ determined that these conditions did not cause *disabling* pain, the ALJ was still required to determine that Plaintiff's pain was *insignificant* before relying conclusively on the grids. *See Thompson,* 987 F.2d at 1488, 1490-91. The ALJ, however, never addressed the question of whether Plaintiff's pain constituted a significant exertional impairment. Nor did he address the issue of whether Plaintiff could perform most of the jobs at the light RFC level. While the ALJ concluded that Plaintiff could perform a full range of light work, Tr. 18, he did not explain how he reached this conclusion. Instead, the ALJ simply stated that, "[b]ecause the evidence supports a finding that the claimant can perform the demands of the full range of light work, a finding of 'not disabled' is directed by [the grids]." Tr. 18. I find that the ALJ's failure to adequately address these issues before relying conclusively upon the grids constitutes reversible legal error. *See Thompson,* 987 F.2d at 1488 (ALJ must first make requisite findings before relying conclusively on grids).

## V.  Conclusion and Summary

In sum, I find that the ALJ erred at step five of the sequential analysis when he failed to make specific findings, supported by substantial evidence, that Plaintiff (1) has no significant nonexertional impairment; (2) can do the full range of work at the light RFC level on a daily basis; and (3) can perform most of the jobs in that RFC level, before relying conclusively upon the grids.

Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct further proceedings, which shall include:

1)    At step five of the sequential five-step analysis, the Commissioner should make all of the following findings before relying conclusively upon the grids:  that Plaintiff has no significant nonexertional impairment; that Plaintiff can do the full range of work at the light RFC level on a daily basis; and that Plaintiff can perform most of the jobs in that RFC level.  The Commissioner should explain the reasons for each of these findings.

2)    If the Commissioner does not make all of the foregoing findings, she cannot rely conclusively upon the grids.  In that case, the Commissioner must obtain vocational expert testimony.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision [docket # 13] is **GRANTED IN PART,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

**W. DANIEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE**

13